UNITED STATES of America, Appellee,

v.

George S. BARTLEY, Jr., Appellant.

No. 87–2522.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1988.

Decided Aug. 25, 1988.

James R. Holmes, Jr., Ft. Lauderdale, Fla., for appellant.

K. Preston Dean, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and STUART\*, Senior District Judge.

STUART, Senior District Judge.

George S. Bartley, Jr. appeals from the District Court's[1] judgment entered on a jury verdict convicting him of knowingly and intentionally distributing cocaine on or about February 23, 1987, and March 2, 1987, in violation of 21 U.S.C. § 841(a)(1). Bartley contends that the district court erred in three respects: (1) in allowing into evidence testimony concerning the defendant's possession of a handgun, ammunition, and forty-seven thousand one hundred dollars ($47,100.00) in cash approximately six (6) months prior to these crimes; (2) in failing to accept the jury's note as a verdict of not guilty or alternatively in failing to specifically respond to the note with an instruction that the government had the burden of proving his guilt beyond a reasonable doubt; and (3) in admitting into evidence a chemist's analytical report indicating the presence of cocaine prior to an explicit determination by the district court that the witness was qualified to testify as an expert. For the reasons set forth below we affirm the judgment of the district court.

## I.  FACTS

Bartley's conviction stems from two sales of cocaine to Albert Bradford, a confidential informant for the Drug Enforcement Administration (DEA). In February 1987, Bradford contacted Special Agent Larry Melton and advised him that George Simon Bartley, Jr., a/k/a Josh, was willing to sell him five (5) grams of crack cocaine for $600. On February 23, 1987, after being searched, Bradford went with Detective Marcus Harris, Kansas City Missouri Police Department, to 4105 Tracy, Kansas City, Missouri. Only Bradford went inside. He testified that he purchased ten half-gram packages of crack cocaine for $600 from Bartley. The substance was later analyzed to be 1.3 grams of cocaine base.

On March 2, 1987, Bradford again contacted DEA and advised them that he could buy five (5) grams of crack cocaine from Bartley. Bradford was again searched, and went with Detective Harris to 1537–39 E. 48th Terrace, Kansas City, Missouri. Only Bradford went inside. He testified

---

\* The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1.  The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

that he purchased ten half-gram packages of crack cocaine for $600 from Bartley. The substance was later analyzed to be 1.7 grams of cocaine base. These are the two sales from which Bartley's convictions arose.

Bradford, Melton and Harris all testified for the government at trial. Two additional witnesses testified about prior drug trafficking by Bartley. Leroy Campbell testified that he became acquainted with Bartley in April 1986. Over the next few months he observed Bartley selling cocaine and supplying drugs to and picking up money from twelve to fifteen drug houses in Kansas City. Bartley controlled the operation at a number of houses. From one house, sales were alleged to be approximately $7,000 a night. Warren Smith testified that he was recruited by Bartley to sell crack at 3725 Flora. Smith sold crack there for approximately three weeks, then was arrested when the house was raided by the police.

## A. PRIOR BAD ACT EVIDENCE

Defendant George Bartley was the sole defense witness. He denied ever meeting Bradford or Campbell and testified that he knew Smith from Fort Lauderdale where they both had worked as carpenters. Defendant testified that his first trip to Kansas City was in July or August of 1986 and that he stayed for three or four days. He said the next time he came to Kansas City was on December 24 or 25, 1986 and that he stayed one week, until about January 1, 1987. He next was in Kansas City February 26 to 28, 1987, then again from March 20 until his arrest on April 1, 1987. Cross-examination revealed discrepancies in these dates. He admitted on cross-examination that he was in an accident in Kansas City on July 21, 1986, but stated he left Kansas City right after that. He then admitted that he got a speeding ticket in Kansas City on July 19, 1986.

The prosecutor then asked appellant if he were present in Kansas City, Missouri, on August 7, 1986, and appellant replied: "August 7, 1986—I can't remember I guess." The prosecutor questioned appellant about whether he was a passenger in a car being driven by a man named Roy Pitter on August 7, 1986, when said car was pulled over by a highway patrolman. Appellant replied in the affirmative. The prosecutor then asked appellant if ammunition fell out of the glove box in the car when the driver reached in to get the registration out and appellant again replied in the affirmative.

Appellant's counsel then objected to this line of questioning on the basis that it constituted evidence of other crimes. The court overruled the objection.

The prosecutor then questioned appellant in detail about the car stop on August 7, 1986, and the subsequent search of the car. Appellant was asked whether the Forty-five Thousand Dollars ($45,000) in cash, packed in boxes in the trunk of the car was his. Appellant replied "yes." Appellant also admitted to the prosecutor that there was Two Thousand One Hundred Dollars ($2,100) in cash on appellant's person on August 7, 1986, in addition to that cash in the trunk.

The prosecutor then began to ask appellant about a nine millimeter, semi-automatic handgun with a fully loaded clip of ammunition that was packed in Frosted Flakes cereal boxes in the trunk of the car on August 7, 1986. Appellant admitted that the gun and ammunition were his. Appellant's attorney's objection to that line of questions was overruled.

The prosecutor continued questioning appellant regarding his possessions in the trunk of a car on August 7, 1986, and elicited testimony from appellant that photographs of appellant with guns and money were also in the trunk, as well as the fact that the money in the trunk was folded up into bundles of a thousand dollars.

During the instruction conference, appellant's attorney requested the court to strike from the record the line of questions regarding the incident on August 7, 1986. The court denied the request and later denied defendant's request for a jury instruction limiting the use of the contested evi-

dence.[2] Appellant argues that the district court erred in admitting and not striking evidence that, six months prior to the dates of the crimes charged in the indictment, defendant was found to be in possession of a nine millimeter semiautomatic handgun and ammunition hidden in Frosted Flakes cereal boxes and $47,000 cash.

■ Bartley's cross-examination testimony concerning the August 7th incident is evidence of prior bad acts and is not admissible to prove that because Bartley was involved in illegal activity in the past, he is guilty of the current charges. *See* Fed.R. Evid. 404(b) and *United States v. Lanier*, 838 F.2d 281, 285 (8th Cir.1988) (per curiam). The government contends that the evidence is admissible, however, to prove knowledge, intent and/or identity. *See* Fed.R.Evid. 404(b).

■ Evidence of prior bad acts is admissible (1) when it is relevant to an issue in question other than the character of the defendant, (2) there is clear and convincing evidence that the defendant committed the prior acts, and (3) the potential unfair prejudice does not substantially outweigh the probative value of the evidence. *United States v. Galyen*, 798 F.2d 331, 332 (8th Cir.1986); *Williams v. Mensey*, 785 F.2d 631, 638 (8th Cir.1986) (quoting *United States v. Gilmore*, 730 F.2d 550, 554 (8th Cir.1984); *United States v. McDaniel*, 773 F.2d 242, 247 (8th Cir.1985). This circuit views Rule 404(b) as a rule generally of inclusion, and a trial court's broad discretion in admitting wrongful act evidence will not be disturbed unless the defendant can show that the proof in question "clearly had no bearing upon any of the issues involved." *United States v. Estabrook*, 774 F.2d 284, 287 (8th Cir.1985).

■ Here, knowledge, intent and identity were material issues because these are essential elements of the crime and the defense was a general denial. Appellant denied that he knew two persons who identified him, specifically putting identity in issue. See *United States v. Burkett*, 821 F.2d 1306, 1309 (8th Cir.1987) and *United States v. Gilmore*, 730 F.2d 550, 554 (8th Cir.1984). The proffered evidence was relevant to the issues and related to wrongdoing similar in kind. "Evidence of weapons and of prior offers to sell drugs is relevant to intent to distribute." *United States v. Galyen, supra* at 333. *See also United States v. Simon*, 767 F.2d 524, 527 (8th Cir.1985), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985); *United States v. LaGuardia*, 774 F.2d 317, 320 (8th Cir.1985); *United States v. McDaniel*, 773 F.2d 242, 247 & n. 4 (8th Cir.1985) and *United States v. Jones*, 676 F.2d 327, 332 (8th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982).

■ Additionally, evidence concerning the possession of large amounts of currency is admissible where the defendant is charged with a crime in which pecuniary gain is the basic motive. *United States v. Wood*, 834 F.2d 1382, 1386 (8th Cir.1987). Evidence of the possession of a large sum of currency is clearly relevant in a narcotics prosecution as evidence of illegal dealings and ill-gotten gains. *Id.*

The evidence regarding the prior acts in this case was clear and convincing, because defendant admitted them himself on cross-examination. While we may have reached a different conclusion, we cannot find that the district court abused its discretion in implicitly finding that the evidence was more probative than prejudicial.

## B. THE JURY NOTE

■ The jury retired to deliberate at 4:00 p.m. and returned at 6:00 with a note, which read:

> We, the jury, are in *complete* concensus (sic) that not enough evidence has been presented in this trial to prove beyond a

---

**2.** The appellant does not raise the failure to give a limiting instruction as a ground for reversal on appeal. Therefore we need not consider it. However, as the trial court gave an instruction limiting the jury's consideration of the bad acts evidence, the request could only have been directed toward limiting the evidence to the appellant's credibility. As we hold that it was within the trial court's discretion to admit the evidence under Federal Rule of Evidence 404(b), such limitation was not required.

reasonable doubt the guilt or innocence of this defendant. Inproprieties (sic) in the prosecution's case to actually place the defendant (or the cocaine he may have supplied) as indicated in counts 1 and 2 lead part of us to believe he is innocent (as he has not been proven guilty) and the lack of defense, to indicate he ws physically not at the locations (or supply cocaine to the locations) as indicated in counts 1 and 2, lead part of us to beleive (sic) he is guilty. These issues, without further testimony, cannot be resolved.

The note was signed by all twelve jurors. The district judge sent the jury home for the evening, to resume deliberations in the morning.

The next morning, defendant requested the court read the jury the burden of proof and reasonable doubt instructions. The district court sent all the instructions to the jury, with a note saying:

Each side has rested and there will be no more testimony. The instructions are sent to you with this note. If after reading them you still have a question, please advise me.

At 12:05 p.m., the jury returned a verdict of guilty on both counts of the indictment.

Defendant argues that when, after two hours of deliberation, the twelve jurors signed a note stating that they were in complete consensus that not enough evidence had been presented to prove beyond a reasonable doubt the guilt or innocence of the defendant the judge should have recognized this as an acquittal, or at least should have specifically instructed the jurors that the government had the burden of proving the defendant's guilt beyond a reasonable doubt.

It is clear from the note that the jury was confused about a number of issues. They appeared to be confused at least as to the burden of proof and as to whether the government's case was insufficient because of "improprieties." However, it is not clear that the jurors all agreed that the government failed to prove its case and that they intended to find the defendant not guilty. If that was the jury's position, the foreman

could have signed the proper verdict form and the case would have been over. The next to last sentence in the note states that "part of us beleive (sic) he is guilty." We do not believe the trial court was required to, or could have, accepted the note as a not guilty verdict. The jury would have had to continue its deliberations with or without further instructions.

"The response to a jury request for supplemental instructions is a matter within the sound discretion of the district court." *United States v. White*, 794 F.2d 367, 370 (8th Cir.1986). *See also United States v. Skarda*, 845 F.2d 1508 (8th Cir.1988). "A trial judge must be painstakingly impartial any time he communicates with the jury during deliberations. He must insure that any supplemental instructions are accurate, clear, neutral, and non-prejudicial." *Id.*

■ The jury had deliberated only two hours when they drafted the contested note. The judge sent them home for the night. When they returned in the morning he gave them the complete set of instructions, which included instructions explaining the burden of proof, instructed them that there would be no further evidence, and that they were to let him know if they had any further questions. As the jury asked several more questions after reading the instructions again and none of the questions dealt with the burden of proof, it appears that the jurors were no longer confused on that issue. Submitting all the instructions is not error, particularly where there are only a total of sixteen instructions. *See Richards v. Solem*, 693 F.2d 760, 766 (8th Cir.1982) *cert. denied*, 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983). We find no error in the district court's response to the jury's note.

## C. EXPERT OPINION

As his final ground for appeal, defendant asserts that the failure to proffer Ronald Wagenhofer, a forensic chemist with the DEA, as an expert qualified to express opinions in the field of chemical analysis, and the failure of the district court to explicitly recognize him as such, denied de-

fendant his right of confrontation under the Sixth Amendment and were improper under Rules 702 and 104(a), Federal Rules of Evidence.

The trial judge has broad discretion in the matter of the admission or exclusion of expert testimony and evidence, and the action will be sustained unless manifestly erroneous. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). Men "skilled in science, art, or particular trades may give their opinions as witnesses in matters pertaining to their professional calling." *Barefoot v. Estelle*, 463 U.S. 880, 903, 103 S.Ct. 3383, 3400, 77 L.Ed.2d 1090 (1983), quoting *Spring Co. v. Edgar*, 99 U.S. 645, 657, 25 L.Ed. 487 (1879). Expert testimony should be admitted whenever it will assist the jury to understand the evidence or determine a fact in issue. Rule 702, Fed.R. Evid.; *United States v. Rose*, 731 F.2d 1337, 1345–46 (8th Cir.), *cert. denied*, 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984).

■ Mr. Wagenhofer testified that he is a forensic chemist with the Drug Enforcement Administration. Appellant's trial counsel, shortly after Mr. Wagenhofer began testifying, stated that he would stipulate to the witness' qualifications as an expert if he had been qualified in the Western District of Missouri. The court responded that it wasn't aware of such a qualification and that the jury was entitled to hear the witness' qualifications.

Wagenhofer testified as to his experience, educational background and training, professional associations, publications, lectures, court cases in which he has testified as an expert, and job duties. He then proceeded, without objection, to describe the tests he performed on the substances in question and the results of those tests, including his opinion that the substances were cocaine. The exhibits were then offered in evidence. Defendant objected to the admission of the evidence on the ground that no predicate had been established for such evidence. Judge Stevens overruled the objection and the cocaine was admitted into evidence.

The government also offered into evidence Mr. Wagenhofer's analytical report regarding the results of the tests indicating the presence of cocaine. Defendant raised the same "no predicate" objection which was again overruled by the court. At the close of the government's evidence, defendant moved for a judgment of acquittal, claiming, inter alia, that Mr. Wagenhofer was not qualified by the district court as an expert witness. The court denied the motion, stated for the record that the witness was qualified, and offered defendant the opportunity to recall him. Defendant declined.

Defendant made no objection prior to Mr. Wagenhofer's testimony as to the identity of the substance in question. If counsel believed Mr. Wagenhofer was not qualified to testify as an expert, he should have objected once the government began to question as to the identity of the substance and prior to Wagenhofer's response. It is clear, however, from the court's subsequent rulings that the court was satisfied that Wagenhofer's credentials and experience qualified him as an expert witness in this field. Defense counsel was then provided with ample opportunity to cross-examine to expose any weaknesses in Wagenhofer's credentials or process of analyzation.

■ Although it is for the court to determine whether a witness is qualified to testify as an expert, there is no requirement that the court specifically make that finding in open court upon proffer of the offering party. Such an offer and finding by the Court might influence the jury in its evaluation of the expert and the better procedure is to avoid an acknowledgement of the witnesses' expertise by the Court. This court, therefore, finds no error in the admission of the testimony of Mr. Wagenhofer and the analytical report and exhibits identifying the presence of cocaine in the substance obtained from Bartley.

The judgment of the district court is affirmed.